People v Shar (2024 NY Slip Op 50589(U))

[*1]

People v Shar

2024 NY Slip Op 50589(U)

Decided on May 17, 2024

Criminal Court Of The City Of New York, Richmond County

Rajeswari, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 17, 2024
Criminal Court of the City of New York, Richmond County

The People of the State of New York

against
Zayan Shar, Defendant.

Docket No. CR-006554-23RI

For the Defendant: 
The Legal Aid Society
60 Bay Street, 3rd Floor
Staten Island, NY 10301
By: Bridget McCarthy, Esq. 
For the People:
Michael E. McMahon 
District Attorney, Richmond County 
130 Stuyvesant Place
Staten Island, NY 10301 
By: Hannah Curley, Criminal Court Associate
Darren Albanese, Esq.

Raja Rajeswari, J.

The defendant is charged by information with one count of Theft of Services (Penal Law § 165.15[3])). The defendant moves, inter alia, to dismiss the information on speedy trial grounds (CPL 170.30[1][e]; 30.30). The People opposed this motion. For the reasons stated below, the defendant's motion is granted.
APPLICABLE STANDARD
The sole count in the accusatory instrument is Theft of Services (Penal Law § 165.15[3]), charged as an A misdemeanor, which is punishable by up to three hundred sixty-four days in prison (Penal Law § 70.15[3]). Accordingly, a motion to dismiss must be granted when the People are not ready for trial "within 90 days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months and none of which is a [*2]felony." CPL 30.30(1)(b); 170.30(1)(e). The ninety-day period commences with the filing of the accusatory instrument. CPL 1.20(17); People v Stirrup, 91 NY2d 434, 438 (1998).
PROCEDURAL HISTORY
The defendant was arraigned on November 3, 2023. It is alleged that on or about November 2, 2023, in the vicinity of 1 Richmond Terrace, Richmond County, New York, Metropolitan Transportation Authority ("MTA") Special Inspector Thomas Femia observed the defendant enter an MTA bus, walk past the fair box system without rendering payment and sit down. On January 22, 2024, the People served and filed a Certificate of Trial Readiness ("CTR") and Certificate of Compliance ("COC") by uploading the documents to the New York Unified Court System's Electronic Document Delivery System ("EDDS"), which included body worn camera ("BWC") recordings, Axon data sheets, bus fare evasion data sheet, bus fare evasion supporting deposition, video surveillance from the MTA bus and a memo book entry made by Special Inspector Femia. Later that same day, the People maintained their readiness on the record. 
On February 5, 2024, defense counsel notified the assigned prosecutor via email that items were not disclosed, including the identity of the two MTA employees, who are observed on both BWC recordings and the MTA bus surveillance recording interacting with the defendant and responding police officers, the memo book from one of the unknown MTA employees and BWC audit logs. On February 6, 2024, the People responded via email that one of the MTA employees was MTA Special Inspector Thomas Femia, who is identified in the accusatory instrument. The People also responded that the second MTA employee is MTA Special Inspector Christopher Piegari. On February 14, 2024, the People served on defense counsel a copy of Special Inspector Piegari's memo book. On the same date, the People filed and served a supplemental certificate of compliance (hereinafter, the "February 14th SCOC"), which disclosed both the Special Inspector Piegari's memo book and adequate contact information for the witness. The February 14th SCOC further provides,
The abovementioned information came to light on February 6th, 2024 upon the assigned receiving an email from defense counsel requesting the identification of a second MTA NYCT personnel on scene on November 2, 2023.Upon review of body worn camera, said individual never provided his name or contact information to members of NYPD. I then reached out to the complainant in this case, Thomas Femia, who explained that the man on the scene with the complainant that day was another MTA Special Inspector named Christopher Piegari. Mr. Femia then gave me an email address to reach Christopher Piegari at, which was immediately disclosed to defense counsel. Later that day Christopher Piegari sent me his memo book from November 2, 2023.
With regards to the BWC audit logs, on February 6, 2024, the assigned prosecutor requested the BWC audit logs through the Richmond County District Attorney's Body Worn Camera Unit. On February 15, 2024, the assigned prosecutor sent a follow up request for the BWC audit logs. The BWC audit logs were then available for download on February 16, 2024.
On February 20, 2024, defense again raised the issue of outstanding discovery on the record, even with the filing of the February 14th SCOC. On the same date, at the defendant's request, a motion schedule was set, and the case was adjourned for decision on the defendant's [*3]motion and to pick a trial date.
Finally, as the People claim, on February 23, 2024, the BWC audit logs were uploaded to DEMS, the online tool used to share discovery with defense counsel and filed their second supplemental certificate of compliance (hereinafter, the "March 1st SCOC"). The March 1st SCOC puts forth,
On January 22, 2024, a Certificate of Compliance was served and filed after having turned over all body worn camera and the coinciding Axon Data Sheets. At said time, the People did not have access to audit trails for said body worn cameras. On February 6, 2024, defense counsel requested audit trails for all body worn camera participants with this case. On February 6, 2024, the assigned immediately asked that the body worn camera unit of the Richmond County District Attorney's Office request from NYPD and upload said audit trails. On February 15, 2024 the assigned again reached out to the body worn camera unit to upload these audit trails, as they were not yet available. On February 16, 2024, the audit trails were uploaded and thereafter turned over to defense counsel on February 23, 2024. Based on clerical oversight, the people are now filing a supplemental Certificate of Compliance on February 29, 2024 although the materials were actually disclosed via DEMS on February 23, 2024.
On February 23, 2024, the defendant filed the instant motion defense counsel, seeking dismissal of the accusatory instrument on statutory speedy trial grounds (CPL 170.30[1][e]; 30.30), asserting, inter alia, that the COC filed by the People is invalid due to the People's failure to disclose the name of and adequate contact information for the two MTA employees who are observed on video surveillance and BWC recordings, the second MTA employee's memo book and the BWC audit logs. 
The People responded in writing on March 7, 2024 that one of the two MTA employees is Special Inspector Thomas Femia, who is the complainant identified in the accusatory instrument. With regards to the second employee, the People state that the assigned prosecutor contacted Special Inspector Femia on February 6, 2024 and received both the name and contact information for the second MTA employee, Special Inspector Christopher Piegari. The People then disclosed Special Piegari's identity, contact information and memo book with their February 14th SCOC. Although the People's response and February 14th SCOC do not make clear when they spoke with Special Inspector Piegari, the People maintain that such information and material are not discoverable because he did not witness the alleged incident, did not inform the New York Police Department ("NYPD") of the allegations and was only in the presence of the defendant for mere seconds. The People further state that such information and material are not discoverable because the People do not intend to call Special Inspector Piegari as a witness. Additionally, with regard to Special Inspector Piegari's memo book, the People maintain that the People are not deemed to be in actual or constructive possession of MTA materials. Moreover, the memo book contains no information regarding the alleged incident, and that dismissal would be too drastic of a measure. Regarding the BWC audit trails, the People maintain that these items are not automatically discoverable.
LEGAL ANALYSIS
It is axiomatic at this point that, absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial for purposes . . . until it has filed [*4]a proper certificate pursuant to [CPL 245.50(1)]." CPL 245.50(3); see also CPL 30.30(5), 245.20(1), 245.50(1). Further, any CTR "must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of [CPL] 245.20." CPL 30.30(5). Therefore, the filing of a "proper" certificate of compliance is a prerequisite to the People being deemed ready for trial. CPL 245.50[3]; see also People v Lobato, 66 Misc 3d 1230(A), 2020 NY Slip Op 50322(U), at *3 (Crim Ct, Kings County 2020); People v Berkowitz, 68 Misc 3d 1222(A), 2020 NY Slip Op 51044(U) (Crim Ct, Kings County 2020).
In this way, the People are required by law to disclose to the defendant "all items and information that relate to the subject matter of the case," that are within or under the People's "possession, custody, or control including but not limited to," the items listed in CPL 245.20(1). The People are likewise required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable . . . and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control." CPL 245.20(2). Once the People have complied with the mandates of CPL 245.20, the People must certify that "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery." CPL 245.50(1).
While these general requirements of Article 245 have become accepted, the last portion must be made clear. A proper, good-faith certificate requires the People to certify two things: first, that the People have "exercise[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery," and, second, after having done so, the People have "made available all known material and information subject to discovery." Id. Crucially, the People must exercise due diligence and produce discovery prior to filing their certificate of compliance. See People v Bay, — NY3d &mdash, 2023 NY Slip Op 06407, at *6 (2023) ("CPL 245.50 and CPL 30.30 require that due diligence must be conducted prior to filing a COC . . . ") (emphasis added); People v Carter, 80 Misc 3d 127(A), 2023 NY Slip Op 50889(U), at *3 (App Term, 2d Dept, 11th and 13th Jud Dists 2023) (People's COC was invalid where they did not actually turn over discovery until several weeks later).
In the years since the passage of Article 245, lower courts have attempted to reconcile its many Daedalian requirements, exceptions, and consequences of noncompliance. However, a careful review of recent appellate authority affirms the duties of the prosecution, as well as the analysis required to determine whether the People have "done all that is required of them to bring the case to a point where it may be tried[,]" (People v England, 84 NY2d 1, 4 [1994]), that this Court and many other lower courts have held. First, the Court of Appeals recently held that where the defendant challenges the validity of the People's certificate of compliance and, thus, their statement of readiness based on the People's alleged failure to exercise due diligence, "the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure." Bay, 2023 NY Slip Op 06407 at *7 (internal citations omitted). Indeed, in determining the first requirement that the People have exercised due diligence prior to filing their COC, the Court must evaluate the record made by the People in support of their certificate. See People v Hooks, 78 Misc 3d 398, 401 (Crim Ct, Kings County 2023); see also People v Erby, 68 Misc 3d 625 (Sup Ct, Bronx County 2020); People v Knight, 69 Misc 3d 546, 552 (Sup Ct, Kings County 2020); People v McKinney, 71 Misc 3d 1221(A), 2021 NY Slip Op. 50456(U) (Crim Ct, Kings [*5]County 2021); People v Adrovic, 69 Misc 3d 563 (Crim Ct, Kings County 2020).
The Court's analysis is "fundamentally case-specific, . . . will turn on the circumstances presented . . . " and will vary from case to case, however, the determination whether the People have demonstrated due diligence should include, "among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery." Bay, 2023 NY Slip Op 06407 at *6. 
Again, the Court of Appeals' decision and our appellate authority illustrate the principal that when discoverable information or materials exist, Article 245 does not permit the People to do nothing. Rather, where the People fail to exercise due diligence and make reasonable inquiries to ascertain the existence of material and information subject to discovery, their certificate of compliance is not filed in good faith and their statement of readiness is rendered invalid. For example, in People v Hamizane, 80 Misc 3d 7, 11-12, (App Term, 2d Dept, 9th and 10th Jud Dists 2023), the Court found that the People's certificates were not "filed in good faith and . . . reasonable under the circumstances (see CPL 245.50[1]), since none of the People's submissions . . . showed that the People had attempted to obtain any police disciplinary records, or attempted to find out whether any such records existed, prior to the filing of these CoCs." The Court further highlighted that the through the passage of Article 245, "the legislature chose to impose stricter disclosure obligations for the People," abrogating what prior appellate authority had required to the People to disclose and what was necessary to demonstrate their readiness. Id. at 11. Similarly, in People v Rahman, "[T]he the record [was] clear that the People made no attempt to obtain the FDNY/EMS records until . . . after they had filed their October 29, 2021 CoC. In these circumstances, we find that the People failed to 'exercis[e] due diligence and mak[e] reasonable inquiries to ascertain the existence of' the FDNY/EMS records and, thus, their CoC was not filed in good faith." 79 Misc 3d 129(A), 2023 NY Slip Op 50692(U), at *3 (App Term, 2d Dept, 11th and 13th Jud Dists 2023) (internal citations omitted).
The LaClair decision from nearly one year ago further highlights the People's responsibilities. There, even though "the People cited various steps that they had taken to confirm the names of the officers involved in the case before filing their . . . CoC," the People's certificate was nonetheless not filed in good faith because their failure to interview a police witness until the eve of trial demonstrated "that the People failed to 'exercis[e] due diligence' and did not 'mak[e] reasonable inquiries to ascertain' the identities of all law enforcement witnesses related to the case." People v LaClair, 79 Misc 3d 8, 11 (App Term, 2d Dept, 9th and 10th Jud Dists 2023) (internal quotations and citations omitted). The Appellate Term likewise rejected the People's argument that their certificate was filed in good faith because their failure to produce a dashcam video was the result of an "unintentional oversight." People v Guzman, 75 Misc 3d 132(A), 2022 NY Slip Op 50445(U), at *4 (App Term, 2d Dept, 9th and 10th Jud Dists 2022). Instead, the Appellate Term found that their certificate was not filed in good faith because "the People provide[d] no information as to what they initially requested of the police, when they requested those items from the police, or when the police sent them the packet. Nor do they provide any explanation as to why they did not check the items sent to them against a list of the requested items, or against the police reports they sent to the defense." Id. Moreover, the People's argument that the defendant failed to alert them to the missing discovery was of no [*6]consequence. Id. Rather, it was the People's failure to exercise due diligence that invalidated their COC.
Such consistent appellate authority leads us, in turn, back to Bay. The recent Court of Appeals' decision, cited by both parties, concerns the first requirement of the People's certificate of compliance. At the trial level, defense raised various discovery issues, to which the People responded that all discovery had been turned over. Bay, 2023 NY Slip Op 06407 at *1. When defense counsel followed up on the purported missing discovery, the district attorney's office disclosed the missing items. Id. at *2. Several weeks later, after the defendant filed a motion to dismiss pursuant to CPL 30.30, the People filed a supplemental certificate. Id. Because the validity of the People's compliance turned on whether they should have known discoverable items and information existed, the Court's determination was whether the People exercised the required diligence and made the appropriate, reasonable inquires to ascertain the existence of discoverable material prior to filing their certificate. Id. at *5.
Under these rules, the Court of Appeals, as the Appellate Term did so in Hamizane, Rahman, LaClair and Guzman before it, analyzed the record made before the trial court. Id. at *8. Applying the "proper legal standard," the Court of Appeals found the People's certificate improper and, thus, their statement of readiness illusory since "there [was] no record support for the conclusion . . . that prior to filing the initial COC, the People exercised due diligence and made reasonable inquiries to identify mandatory discovery items relating to this case." Id. The Court of Appeals noted that "[t]he belated disclosure [t]here consisted of routinely produced disclosure materials[,]" and the People failed "to establish that they had exercised due diligence" because they made no mention of any efforts taken to ascertain the existence of discovery materials before the COC was filed." Id. (emphasis added).
The Court of Appeals further found that when reviewing a motion to dismiss pursuant to CPL 30.30 on the grounds that the People failed to exercise due diligence and make reasonable inquiries to ascertain the existence of discoverable material, it is the People who bear the burden of making a clear record "that they did, in fact, exercise due diligence and [make] reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure." Id. at *7. As the lower courts have stated earlier, "If any known discoverable materials were not exchanged prior to the filing of the COC, the prosecution must demonstrate how due diligence was exercised with regard to those items not exchanged. They must detail the reasonable inquiries made to obtain these discoverable materials." People v Winston, 78 Misc 3d 1201(A), 2023 NY Slip Op 50130(U), at*7 (Crim Ct, Bronx County 2023) (citations omitted). If the People fail to make such a record before the Court, "the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed." Bay, 2023 NY Slip Op 06407 at *7. Prejudice and sanctions have no bearing in this analysis. Id. at *2-3.
However, the determination made by the Court of Appeals in Bay does not address the second component of the People's certificate — whether the People have actually "disclosed and made available all known material and information subject to discovery." CPL 245.50(1). Such requirement has been evaluated in People ex rel. Ferro v Brann, 197 AD3d 787 (2d Dept 2021) and People v Carter, 80 Misc 3d 127(A), 2023 NY Slip Op 50889(U) (App Term, 2d Dept, 2d, 11th and 13th Jud Dists 2023]). The oft quoted holding of Ferro that the People's certificate of compliance shall "not be deemed complete until all of the material and information identified in the certificate as subject to discovery and electronically shared with the defendant [is] actually [*7]produced to the defendant," concerns matters where the People are aware discoverable materials and information exists, yet nonetheless certify their compliance without actually disclosing it. Ferro, 197 AD3d at 788. Such duty to actually produce discovery to defendant is a necessary component that cannot be deemed satisfied despite the People's best intentions to comply with their statutory requirements. See also Carter, 80 Misc 3d 127(A) at *2 (holding that the People did not file a proper certificate of compliance because they failed to produce discovery due to "a possible technological error" and, therefore, could not have stated ready). 
Stated another way, "What the People may not do is file a Certificate of Compliance in which they claim to have exercised due diligence and turned over 'all known material and information,' (CPL 245.50[1]), while at the same time not actually turning over all known material and information, without the express permission of the Court." People v Adrovic, 69 Misc 3d 563, 574 (Crim. Ct., Kings County 2020); see also People v Ashraf, 80 Misc 3d 1223(A), 2023 NY Slip Op 51068(U), at *2 (Crim Ct, Richmond County 2023). 
APPLICATION
With these rules and principles laid out, the Court shall consider the parties' contentions in the instant matter. Defendant's motion argues that the People's COC is invalid because the People belatedly disclosed the identity and memo book of, as well as contact information for, Special Inspector Piegari. Defendant further alleges that the COC is invalid due to the People's failure to disclose BWC audit logs related to the BWC recordings produced in this matter, which the People subsequently produced in their March 1st SCOC after the defendant's motion was filed. 
A. Name and Adequate Contact Information of Special Inspector Piegari
In order to file a certificate of compliance in good faith, the People are required to disclose "[t]he names and adequate contact information for all persons other than law enforcement personnel whom the prosecutor knows to have evidence or information relevant to any offense charged or to any potential defense thereto..." CPL 245.20(1)(c) (emphasis added). Likewise, the People are required to make a diligent, good faith effort to verify the existence of and make available all discoverable material outside of the People's possession, custody or control. CPL 245.20(2); see also Rahman, 2023 NY Slip Op 50692(U) at *2 (" . . . in light of the instruction to interpret CPL 245.20(1) in favor of disclosure, . . . the People were required to 'make a diligent, good faith effort to ascertain the existence of [the FDNY/EMS records] and to cause [the records] to be made available for discovery' even if the records were not in the People's 'possession, custody, or control.'")
"When a defendant challenges a certificate of compliance on the ground that discoverable material was provided after the certificate of compliance was filed, the prosecutor must account for the belated disclosure and provide the court with sworn allegations of fact that allow the court to determine whether the prosecutor exercised due diligence and made reasonable inquires to provide the defendant with all known discovery material." People v Hutchins, 74 Misc 3d 1234(A), *1 (Sup Ct, Kings County 2022) (citing People v Perez, 73 Misc 3d 171, 177 [Sup Ct, Queens County 2021] ["upon a challenge to a certificate of compliance, the People must articulate their efforts to comply with CPL 245.20(1) with respect to the statutory subsections or specific items of discovery at issue"]). Therefore, when the validity of a COC is [*8]challenged, the Court must determine whether the People exercised the requisite level of diligence in obtaining the materials, whether their certification was filed in good faith and was reasonable under the circumstances. See People v McKinney, 71 Misc 3d 1221(A) (Crim Ct, Kings County 2021); Adrovic, 69 Misc 3d 563.
Critically, as stated above, the Court of Appeals has held that "CPL 245.50 and CPL 30.30 require that due diligence must be conducted prior to filing a COC." Bay, 2023 NY Slip Op 06407 at *6 (emphasis added). Thus, even where the People belatedly disclose material and information, a "post-filing disclosure and a supplemental COC cannot compensate for a failure to exercise diligence before the initial COC is filed." Id. While the People maintain that they have exercised due diligence, the record that they have put forth before this Court demonstrates that it was only done after their initial COC was filed. Thus, the scenario before this Court falls within the group of cases in which the prosecutor certified compliance without knowing whether other discoverable material exists. The appellate authority spelled out above has consistently held that where the People do not, in fact, exercise due diligence or make reasonable inquiries to ascertain the existence of discoverable material, their certificate stating otherwise is not made in "good faith." See Hamizane, 80 Misc 3d at 11-12; Rahman, 2023 NY Slip Op 50692(U) at *3; LaClair, 79 Misc 3d 8 at 11; Guzman, 2022 NY Slip Op 50445(U) at *4.
In the instant matter, the People have failed to exercise due diligence and make reasonable inquiries to identify Special Inspector Piegari or disclose his identity, contact information or memo book at all before filing their initial COC. Rather, as the People have made clear, they only begun efforts to identify and contact Special Inspector Piegari well after they filed their initial COC on January 22nd. Moreover, the witness' involvement was readily apparent from the People's own disclosures. Upon the Court's review of the materials turned over to the defendant, Special Inspector Piegari is present during the investigation of the allegations and can be assisting in requesting the defendant and others to remove himself from the bus in the moments after the defendant entered the bus. During this time, the defendant can be seen speaking with the MTA personnel, including Special Inspector Piegari who is standing nearby. Special Inspector Piegari can be seen waiving down officers who eventually arrested the defendant and leading the officers to the defendant. Special Inspector Piegari's existence and involvement in the case would have been "obvious . . . to a prosecutor exercising due diligence." Bay, 2023 NY Slip Op 06407 at *6. Therefore, in the time before the People filed their COC, the People had the option to determine whether Special Inspector Piegari was someone with "evidence or information relevant to any offense charged or to any potential defense thereto" (CPL 245.20[1][c]) or seek a ruling or extension from the Court (CPL 245.20[5], 245.70). The People, rather, chose to do nothing.
While the People responded to the defendant's request for this missing information approximately eight days later, the People fail to detail their efforts to identify the witness prior to their initial COC, nor do they offer any explanation for the lapse in discovery. Bay, 2023 NY Slip Op 06407 at *6. Instead, the People only provide steps to ascertain the existence of discoverable material after the COC was filed. Additionally, the case does not appear to be, nor do the People allege it to be, a complex matter. Id. Rather, the case involves a rather simple allegation of failing to pay bus fare involving, as detailed in the People's certificates, three law enforcement officers and two MTA employees. Applying the factors laid clear in Bay, this Court cannot find that the People have met their burden in defending their COC.
That the People subsequently disclosed Special Inspector Piegari's name, contact [*9]information and materials after already certifying they exercised due diligence to discover all discoverable materials is of no difference. While CPL 245.50(1) permits a prosecutor to file a supplemental certificate of compliance when additional discovery is later provided, the People may only do so when the prosecutor "subsequently learns" that additional discovery material exists but has not been disclosed (see CPL 245.60). Here, the People do not allege that they learned of the existence of a non-law enforcement witness after certifying the compliance. Rather, the People's response and own discovery make clear that a person with information related to subject matter of the case existed when they filed their initial COC, yet they failed to make any efforts to ascertain this information. When information is not in the People's possession, Article 245 does not permit the People to do nothing. Instead, the law requires the People "make a diligent, good faith effort to ascertain the existence" of discoverable materials and information and "cause such material or information to be made available for discovery." CPL 245.20(2). In the absence of any information to explain the belated disclosure of this material and the efforts made to locate it, the People have failed to defend their COC, and this Court has no basis to find that the People exercised due diligence prior to filing their initial COC. 
Additionally, the People generally assert that they do not intend to call Special Inspector Piegari as a witness, however, whether they intend to call someone as a witness is not the legal standard. Rather, as a review of the evidence already produced by the People in their COC, the witness had some interaction with the police which precipitated the defendant's arrest. The identity and contact information of such a witness is discoverable as it relates to the subject matter of the case, and a reasonably diligent prosecutor would have sought such witness out prior to their filing their COC. See CPL 245.20(1); see also People v Nieves, 77 Misc 3d 1212(A), 2022 NY Slip Op 51193(U) (Crim Ct, Bronx County 2022) (holding that the People's COC was invalid where the officers spoke with individuals present at the scene of the alleged incident "regardless of the prosecutor's individual assessment of that information"); c.f. People v McQueen, 80 Misc 3d 225 (Crim Ct, Kings County 2023) (contact information for witnesses was not required where the individuals stated they did not witness events that triggered defendant's apprehension or arrest, and the third individual remained silent).
Accordingly, the People were required to make reasonable, diligent efforts to ascertain the existence of this discoverable information and materials and make it available. CPL 245.20(2); see People v Francis, 75 Misc 3d 1224(A), 2022 NY Slip Op 50655(U) (Crim Ct, Bronx County 2022) (holding that the People's failure to make any efforts to identity the identity of FDNY members invalidated their COC); People v Brickus, 73 Misc 3d 1218(A), 2021 NY Slip Op 51078(U) (Crim Court, NY County 2021) (the People's COC was invalid where they failed to disclose the complainant's contact information); People v Todd, 67 Misc 3d 566 (Sup Ct, Queens County 2020) (CPL 245 requires that, at a minimum, the People must attempt to ascertain the names and contact information of witnesses); c.f. People v Edwards, 74 Misc 3d 433, 437 (Crim Ct, NY County 2021) (the People's detailed efforts to find the names and contact information for security personnel demonstrated diligent, good faith efforts). Because the People failed to do so prior to filing their COC or SCOC, such certificates were not filed in good faith.
B. BWC Audit Logs
The defendant further argues that the People's COC is invalid because they failed to [*10]produce BWC audit logs or trails related to the BWC recordings in the instant matter. The People, relying on People v Williams, 73 Misc 3d 1091 (Sup Ct, Kings County 2021), argue that the audit logs are not automatically discoverable pursuant to CPL 245.20(1)(g) because the information in the audit logs "describes the history, tracking and management of the BWC itself[,]" the "data is created by a third-party vendor and not stored by the NYPD[,]" and, therefore, the defendant has failed to show how the logs "relate to the subject matter of the case[,]" or "would relate to the defendant or any of the crimes charged." The People further maintain that the logs are not discoverable pursuant to CPL 245.20(1)(u)(i)(B) because "that statute relates to information 'seized or obtained' by or on behalf of law enforcement not information electronically generated by law enforcement personnel." Id. The People also aver that they had produced Axon Data Sheets to the defendant "under the impression that said Axon Data Sheets contained the same information as the audit trails in question." People's Response, p. 12. The People only produced the audit logs to the defendant and certified their compliance out of an abundance of caution in their March 1st SCOC.
The defendant, in response, argues that the audit logs are indeed discoverable under various categories, including CPL 245.20(1)(e) and (u)(i)(B). Relying on People v Torres, 79 Misc 3d 1204(A), 2023 NY Slip Op 50532(U), at *4 (Crim Ct, Queens County 2023), the defendant argues that the People are indeed in possession of the audit logs because the logs are stored on Evidence.com, a website used by the NYPD to store and share BWC recordings with prosecutors and other agencies, a point that the People's response does not attempt to controvert. Torres further states the audit logs "detail the police's actions on a video file throughout its entire life[,]" allowing an officer to categorize and make subjective statements regarding the videos. Id. The logs also document the officer's use of a BWC itself, including "when the officer chose to start or stop recording, whether they chose to manipulate the volume control, and why video or audio started or stopped recording." Id. at *3. The defendant further argues that because the audit logs contain notes made by the officer regarding the incident and, therefore, may tend to impeach the credibility of the officer. The defendant also argues that the audit logs contain far more information related to the subject matter of the case than Axon Data Sheets.
Upon review of the materials submitted by the parties, this Court holds that, under these circumstances, the BWC audit logs are automatically discoverable as such information in the logs constitute, at a minimum, "statements . . . made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto, including . . . notes of police and other investigators . . . " CPL 245.20(1)(e); see People v Ballard, 82 Misc 3d 403 (Crim Ct, Queens County 2023). As put forth by the defendant, BWC audit logs may fall into at least two types of categories — evidence audit logs and device audit logs. The Court's review of the BWC audit logs produces in this matter reveals multiple instances of notes made by the police officers in this case, as well as information recorded as to the use of the device. For example, the BWC audit log related to Officer Filak's BWC reveals that the officer made notes at various points during the recording describing the type of encounter, such as "Category 3. Investigative Encounter Level 1, 2, 3" and "Category Past Crime." Similarly, Officer Harman's audit trail notes several categories including "Prisoner Transport" and "Theft of Services." The officers' BWC audit trail further reveals multiple instances where the recording was started and stopped due to the officer activating and deactivating the BWC. 
Contrary to the People's argument, the discovery statute does not limit the type of recorded statements required to be disclosed, and the fact that CPL 245.20 does not expressly list [*11]BWC audit trails or logs is of no consequence. As the Court of Appeals found, the categories of material subject to disclosure enumerated under CPL 245.20(1) is not an all-encompassing list, and the People's "disclosure obligations include, but are not limited to, these categories." Bay, 2023 NY Slip Op 06407 at *4. Clearly, when an officer categorizes or take notes regarding the encounter with or arrest of the defendant, the officer has created statements related to the subject matter of the case, and such notes are discoverable pursuant to CPL 245.20(1)(e). 
For similar reasons, the BWC audit logs are also discoverable pursuant to CPL 245.20(1)(u)(i)(B), which requires the People disclose "[a] copy of all electronically created or stored information seized or obtained by or on behalf of law enforcement from a . . . source other than the defendant which relates to the subject matter of the case." The arguments from the defendant and the review of the records produced to the Court reveal that it is an officer who either inputs the information or creates the underlying information through the use of the body-worn camera itself. Therefore, the information in the audit trails is indeed created, stored, and obtained by or on behalf of law enforcement.
The People defend their COC in arguing that they disclosed the Axon Data Sheets for the corresponding BWC recordings in the instant matter. However, as the defendant points out and the Court's review confirms, the Data Sheets contain less information than that in the audit logs. In comparing the audit logs with the Data Sheets, for example, this Court found that the Data Sheets do not contain the investigative notes and tags made the officers, as referenced above, nor does it contain information regarding the operation of the BWC or where supervising officers added or edited the entries made by the officers. In this way, the Data Sheets are incomplete summaries of the audit logs and fail to sustain the People's duty to disclose.
Although not fully argued by the People, the audit logs are in their possession. CPL 245.20(2) states that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" for purposes of the People's discovery requirements. CPL 245.55(1) further states that the prosecution must take steps to ensure "a flow of information is maintained" with "the police and other investigative personnel." Members of the NYPD who are equipped with body-worn cameras are required to share their body-worn camera files with prosecutors through Evidence.com. See NYPD Patrol Guide Procedure Number 212-123.[FN1]
As the defendant credibly argues and as shown in the discovery produced by the People, Evidence.com is the website where the BWC recordings themselves are stored, shared with the prosecution and accessed by the People. The People's own response even indicates that their office was able to access the recordings and the audit logs through Evidence.com without a subpoena. See CPL 245.20(2). That NYPD officers create BWC recordings and corresponding data and then are required to store and share such discoverable materials and information through an internet-based application to which the People have clear access renders the audit logs within their "possession, custody or control." See People v Gutierrez, 78 Misc 3d 411, 422-424 (Sup Ct, Bronx County 2023) (People are deemed in possession of ShotSpotter data since the police have access to said data even if it is generated and maintained by a third party).
Here, the People were in possession of materials and information created by law enforcement related to the subject matter of the case. The People failed to disclose it because they were "under the impression" they were in compliance with their duties to disclose by sharing an incomplete summary. Even if this Court were to credit their response, Article 245 expressly provides "a presumption in favor of disclosure," and requires actual production of discovery. Nor can this Court find that such mistaken belief is an exercise of due diligence. Bay, 2023 NY Slip Op 06407 at *6. There are no special circumstances, nor do the People allege any, to warrant the nondisclosure of these police generated discoverable materials. As a result, the People have failed to demonstrate that their certificates that they had disclosed all known material were filed in good faith.
C. Underlying Police Records
The Court's decision will not address the defendant's remaining contentions, as they are rendered moot.
CHARGEABLE TIME CALCULATION
In this case, the People have not presented any factual basis that special circumstances exist under CPL 245.50(3) for the People to be deemed ready without meeting their discovery requirements, nor that diligent efforts were made to obtain discovery or that all discoverable material was disclosed to the defendant before filing a certificate affirming that all such material had been provided. Moreover, the People have not shown there was an obstacle to obtaining the discoverable material that might qualify for a "good cause" extension under CPL 245.70(2) or to toll speedy trial under CPL 30.30(4)(g). Additionally, defense brought the missing discovery to the People's attention on February 5, 2024. As such, the People's the initial COC and February 14th SCOC were illusory.
November 3, 2023 to December 15, 2023. The defendant was arraigned on an information on November 3, 2023. The case was adjourned to December 15, 2023, for the People to comply with their discovery obligations and hearings and trial. The People are charged 42 days for this adjournment.
December 15, 2023 to January 22, 2024. On December 15, 2023, the People had not yet filed a COC or CTR. The case was adjourned to January 22, 2024 for the People to comply with their discovery obligations and hearings and trial. The People are charged 38 days for this adjournment.
January 22, 2024 to February 20, 2024. On January 22, 2024, prior to the case being called on the record, the People served a COC and CTR on defense via email and filed the same with the court by uploading the documents to the New York Unified Court System's Electronic Document Delivery System ("EDDS"). Later that day, the People maintained their readiness, and the matter was adjourned to February 20, 2024 for hearings and trial. However, the People's failure to obtain discoverable information rendered the January 22nd COC invalid. The People are charged 29 days for this adjournment.
February 20, 2024 to March 18, 2024. On February 20, 2024, the defendant raised objections to the People's COC on the record and requested a motion schedule. On February 23, 2024, the defendant filed the instant motion to dismiss. On March 7, 2024, the People filed their [*12]opposition, and the defendant replied on March 12, 2024. On March 18, 2024, the Court adjourned the matter to April 3, 2024 for decision on the parties' arguments. This period is excludable pursuant to CPL 30.30 (4)(a).
As explained above, the People's failure to make diligent, good faith efforts to ascertain the existence of discoverable information and material and make it available for disclosure rendered their COC, February 14th SCOC and corresponding CTRs illusory. Having not stopped the speedy trial clock or demonstrated an excludable adjournment, 30.30 continued to run until the defendant requested the motion schedule on February 20, 2024. 
CONCLUSION
The People had 90 days from commencing this case to validly state ready for trial. CPL 30.30(1)(b). The People commenced this case on November 3, 2023. As explained above, the People's January 22nd and February 14th CTRs were not valid, as neither was preceded by a proper certificate of discovery compliance (CPL 245.50[3], 30.30[5]). Therefore, each were illusory, and time continued to accrue until a valid COC were filed or other excludable time period is deemed applicable. See CPL 245.50(3); England, 84 NY2d at 4 (1994) ("A statement of readiness at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock."). Here, the speedy trial clock continued to run until February 20, 2024 when the defendant requested a motion schedule, and, therefore, there is a total of 109 days chargeable to the People, more than the maximum time allotted by law. CPL 30.30(1)(b). Therefore, the defense's motion to dismiss must be granted.
The foregoing constitutes the order and decision of the court.
Dated: May 17, 2024
Staten Island, New York
E N T E R:
RAJA RAJESWARI, A.J.S.C.

Footnotes

Footnote 1:Available publicly here: https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide2.pdf.